UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID and AMANDA SAKALOWSKI, | ) | |
| | ) | |
| Plaintiffs / Counterclaim Defendants, | ) | |
| | ) | |
| vs. | ) | Case No. 4:10CV02052 AGF |
| | ) | |
| METRON SERVICES, INC., and | ) | |
| MIRACLE DEBT GROUP, LLC, | ) | |
| | ) | |
| Defendants / Counterclaim Plaintiffs. | ) | |

**MEMORANDUM AND ORDER**

This is a putative class action filed on October 28, 2010, by husband and wife, David and Amanda Sakalowski, both Missouri residents, against Defendants Metron Services, Inc., and Miracle Debt Group, Inc., both California corporations (referred to herein collectively as "Metron"). Plaintiffs allege that Metron acts as a "debt adjuster" for clients, including themselves. Plaintiffs assert claims of breach of fiduciary duty, the unauthorized practice of law, and violation of the Missouri Merchandising Practices Act, on behalf of themselves and all Missouri residents who have allegedly been victims of improper and illegal conduct on the part of Metron in negotiating consumer debt settlements for them.

The matter is now before the Court on Metron's motion filed on February 17, 2011, to disqualify Plaintiffs' counsel, James Eason and Peter Van Leunen ("Counsel"). Oral argument was held on the motion on May 3, 2011. For the reasons set forth below, this motion shall be granted.

# BACKGROUND

Metron helps consumers settle unsecured debts. On October 28, 2008, Metron entered into a Wholesale Marketing Agreement with Legal Club of America Corp. ("Legal Club"), whereby Metron agreed to purchase Legal Club's Legal Care Direct Family Plan, for the benefit of Metron's clients. The Agreement required Legal Club to provide and maintain a network of attorneys. (Doc. #21-4, Ex. 4-A.) When legal issues would arise for its clients, such as lawsuits from creditors, Metron would refer the clients to Legal Club's participating plan attorneys, who pursuant to an Attorney Agreement with Legal Club, would provide legal services at a reduced rate.

In 2008 or 2009, Counsel entered into the Attorney Agreement with Legal Club as a participating attorney. The Attorney Agreement contains the following indemnification provision:

> The undersigned attorney agrees to hold Legal Club of America Corporation's administrators and clients, harmless and indemnify said parties from any and all liability, loss or damages such parties may sustain as a result of actions, claims, demands, costs, including reasonable attorney's fees due to the subsequent malpractice or misrepresentation or that referral.

(Doc. #21-4, Ex. 4-B.)

The Attorney Agreement also states,

> [Legal Club] has no part in the attorney/client relationship. [Legal Club] is not privy to and does not have access to client legal files or records. [Legal Club] does not, either expressly or implied, have any influence or interference with the professional independent judgment of a participating attorney.

*Id.*

After Plaintiffs advised Metron that a collection lawsuit had been filed against them, Metron referred Plaintiffs to Counsel. Counsel learned from Plaintiffs about various practices of Metron that Counsel believed were improper and/or illegal, and Counsel took Plaintiffs on as clients, filing, on their behalf, the present lawsuit challenging these practices. Count I asserts a claim for breach of fiduciary duty by charging a "settlement fee" for a certain service; Count II seeks statutory damages for the alleged unauthorized practice of law; and Count III seeks damages for Metron's alleged violation of the Missouri Merchandising Practices Act ("MMPA").

Among the allegations to support these claims, are the allegations that Metron did not communicate with its clients through attorneys licensed to practice law in the State of Missouri, that Metron failed to use reasonable care and diligence in settling Plaintiffs' debt, that Metron's conduct was identical or nearly identical when it dealt with each putative class member, and that Metron advised Plaintiffs to cease paying their creditors. Metron filed a counterclaim for attorney's fees under the MMPA.

On November 29, 2010, approximately one month after the present lawsuit was filed, Legal Club sent Counsel a Notice of Intent to Sue, expressing Legal Club's intent to sue Counsel for intentional interference with Legal Club's contractual relationships, breach of contract and/or fiduciary duty, indemnification for third-party claims, and fraud. The Notice stated, "[a]s a plan attorney, you are prohibited from pursuing adverse action against plan partners by plan members." The Notice asserted that Counsel interfered with Metron's debt settlement programs, calling this interference an "egregious act." (Doc. #22, Ex. 5-A.)

On December 23, 2010, Counsel sent Metron a holiday email that Counsel sent to all its clients and that stated, "Thanks for using us for your legal needs." The email was sent to Allison Martin, Metron's Client Services Representative whose task was referring Metron's clients to lawyers in the clients' home states in the event they were sued by creditors.

Metron argues that Counsel should be disqualified pursuant to Rule 4-3.7(a) of the Missouri Supreme Court Rules of Professional Conduct[1] because Counsel are likely to be called as necessary witnesses at trial to show that Metron did not engage in the practice of law, but rather referred Plaintiffs to Counsel when a legal issue arose; and used reasonable care and diligence in helping Plaintiffs. Metron argues that disqualification is required under Rule 4-3.7(a) for the further reason that Counsel may become parties to this litigation. Metron asserts that it is considering whether to bring Legal Club into this lawsuit as a result of the actions of its participating plan counsel, whereupon Legal Club would undoubtedly bring Counsel into the lawsuit. Metron states that it is also considering whether to sue Counsel directly for indemnification and/or tortiously interfering with Metron's relationship with its clients.

Metron also argues that disqualification of Counsel is warranted under Rule 4-1.7(a)(2), which prohibits a lawyer from representing a client if that representation "involves a concurrent conflict of interest." Metron argues that there is a risk that

---

[1] This Rule provides that, with certain exceptions not relevant here, "[a] lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness."

Counsel's representation of Plaintiffs and the putative class "will be materially limited by Counsel's responsibilities to Metron and Legal Club and by [Counsel's] personal interest in resolving their personal disputes with Metron and with Legal Club. Metron reads the indemnification provision in the Attorney Agreement as requiring Counsel to indemnify Metron for damages arising out of this very lawsuit, as Metron is a "client" of Legal Club as that term is used in the indemnification provision.

Lastly, Metron points to the December 2010 Christmas email from Mr. Van Leunen to Allison Martin as evidence that he considered Metron to be a client, and "[a]t a minimum, evidence of 'a close relationship'" between Metron and Mr. Van Leunen.

Counsel respond that Defendants' motion to disqualify Counsel should be denied because there is no professional rule or law of professional ethics that an attorney cannot represent a client in an action against a referral source. Counsel further argues that there is no real or potential conflict of interest between or among Metron, Legal Club, and Counsel, because Metron was never Counsel's client. Counsel argue that the term "client" in the indemnification provision in question refers to debtors like Plaintiffs and not to entities like Metron. Easen and Van Leunen each attest by affidavit dated February 23, 2011, that he never had an attorney-client relationship with Metron or with Legal Club. Van Leunen further attests that Counsel inadvertently sent the holiday email to Metron as part of a "blast" email that was sent, not just to clients, but to all contacts in Van Leunen's email account whose names began with the letter "A."

Counsel further posit that the contract between Legal Club and Metron, to which Counsel was never a party, cannot affect Counsel's ability to represent Plaintiffs, also

non-parties to that agreement, and that there is no credible scenario under which Counsel would have to provide testimony at trial for any of the claims at issue.

Counsel represented at the hearing that they anticipate that the current lawsuit will involve 40 to 60 class members. Counsel did not dispute Metron's representation that approximately 12 of its clients – or one-quarter of its Missouri clients – were referred to Counsel when legal assistance was needed, and that this was more than the number of Missouri clients referred to any other attorney. Counsel testified that they never entered into an attorney-client relationship with Plaintiffs in connection with the creditor matter for which Plaintiffs were referred to Counsel, because by the time Counsel spoke to Plaintiffs, Plaintiffs had already decided to contact a bankruptcy attorney.

On June 13, 2011, the Court granted Metron's unopposed motion to amend their counterclaim by adding a counterclaim against each Plaintiff for contractual indemnification and defense, based a document entitled "Permission to Communicate" executed by each Plaintiff on September 7, 2009. In these documents, Plaintiffs assert that they understand that Metron is not authorized to provide legal advice, and they "expressly agree to waive, forego, indemnify and defend any claim against [Metron] related to the practice of law." Ex. 1 to (Doc. #35-1.)

## **DISCUSSION**

Two sources of authority are relevant in determining whether to disqualify Counsel. First, attorneys are bound by the Missouri Rules of Professional Conduct.[2]

---

[2] This Court's Local Rule 12.02 adopts as this District's Rules of Professional Conduct the Rules of Professional Conduct adopted by the Missouri Supreme Court.

Second, because motions to disqualify counsel in federal proceedings are substantive motions affecting the rights of the parties, standards developed under federal law apply. *Cole v. Ruidoso Mun. Schs.*, 43 F.3d 1373, 1384 (10th Cir. 1994) (citation omitted); *In re Am. Airlines, Inc.*, 972 F.2d 605, 610 (5th Cir. 1992) (citing cases from other circuits).

The Eighth Circuit has explained that "[b]ecause of the potential for abuse by opposing counsel, disqualification motions should be subjected to particularly strict scrutiny." *Macheca Transp. Co. v. Philadelphia Indem. Co.*, 463 F.3d 827, 833 (8th Cir. 2006) (citation omitted). Furthermore, a disqualification of counsel "serves to destroy a relationship by depriving a party of representation of their own choosing. Disqualification often results in increased expenses, delay in resolution of the proceedings, and always deprives a party of its choice of counsel." *Commonwealth Land Title Ins. Co. v. St. Johns Bank & Trust Co.*, No. 4:08-CV-1433 CAS, 2009 WL 3069101, at *4 (E.D. Mo. Sept. 22, 2009) (quoting another source). Although the moving party must satisfy a high standard of proof to sustain a disqualification motion, any legitimate doubts must be resolved in favor of disqualification. *Id.*

Rule 4-3.7(a) of the Missouri Supreme Court Rules of Professional Conduct, quoted above, "has been interpreted to mean an attorney is a 'necessary witness' only if 'there are things to which he will be the only one available to testify.'" *Macheca Transport*, 463 F.3d at 833 (quoting *State ex rel. Wallace v. Munton*, 989 S.W.2d 641, 646 (Mo. Ct. App. 1999)). A lawyer who is likely to be a necessary witness may still represent a client in the pretrial stage. *Droste v. Julien*, 477 F.3d 1030, 1035 (8th Cir. 2007) (citing ABA Comm. on Ethics & Prof'l Responsibility, Informal Op. 1529 (1989)

(A lawyer who anticipates testifying as a witness on a contested issue at trial may represent a party in discovery and other pretrial proceedings provided the client consents after consultation and the lawyer reasonably believes that the representation will not be adversely affected by the lawyer's own interest in the expected testimony)).

Here, the Court believes that Metron has made a sufficient case that Counsel are likely to be called as necessary witnesses in this action. In defending Plaintiffs' claims, Metron will likely want to show the jury that one thing it did for its clients, including Plaintiffs, was enter into the agreement with Legal Club to assure that Metron clients would have legal representation if needed. Counsel would be the natural witnesses to call in support of such a defense, and Metron should not be precluded from doing so.

Furthermore, the Court believes that the record shows a likelihood that Counsel will be brought into this action as actual parties, especially in light of the indemnification clause in the Attorney Agreement, quoted above. Counsel's argument that Metron does not have a good faith claim against Counsel for tortious interference with a business relationship does not refute the likelihood that Metron or Legal Club will bring a claim against Counsel arising out of the relationships between Counsel, Metron, Legal Club, and Plaintiffs, making it inappropriate for Counsel to be representing Plaintiffs in the current action.

One factor that tips the scales in favor of disqualification here is that this action was filed as a class action. To allow Counsel to proceed in their representation of Plaintiffs, even at the pretrial stages would require Plaintiffs' informed consent. At the hearing, Counsel acknowledged that obtaining the consent of the other putative plaintiffs

in the context of a class action would not be feasible. As explained by the Missouri Supreme Court in the context of a motion to disqualify counsel for plaintiffs in a class action, "[t]he court has an enhanced duty in class action proceedings to safeguard the interests of the class members who did not participate in the formation of the class." *State ex rel. Union Planters Bank, N.A. v. Kendrick*, 142 S.W.3d 729, 740 (Mo. 2004).

Counsel's refutation of Metron's "likelihood" argument depends in large part on Counsel's interpretation of the indemnification provision in question. According to Counsel, the term "clients" in the provision does not refer to entities such as Metron, but rather to parties such as Plaintiffs herein. Under this reading of the provision, it would appear that Counsel would owe no duty of indemnification to Legal Club for claims by Plaintiffs against Metron. However, another reasonable interpretation of the term "clients" is that it does refer to entities such a Metron.

The Court also believes that allowing Counsel to represent Plaintiffs here has the appearance of impropriety that might undermine public confidence in the judicial system. *See State ex rel. Horn v. Ray*, 325 S.W.3d 500, 512 (Mo. Ct. App. 2010) (considering the appearance of impropriety as a factor in ruling a motion to disqualify counsel); *Kendrick*, 142 S.W.3d at 740 (same).

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' motion to disqualify Plaintiffs' counsel is **GRANTED**. [Doc. #20]

**IT IS FURTHER ORDERED** that Plaintiffs shall have 21 days from the date of this Memorandum and Order to have new counsel enter an appearance.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 18th day of July, 2011.